THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOYCE LOONEY, Defendant-Appellant.

First District (3rd Division)   No. 62066

Opinion filed February 16, 1977.

Daniel H. Wolff, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Donna Jean Ramey, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

After a trial by jury, defendant, Joyce Looney, was convicted of the offenses of theft of property not exceeding $150 in value (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)) and battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—3). She was sentenced to two years probation plus $100 in costs and $250 in fines for theft, and to two years probation with the first 30 days in the Cook County Department of Corrections plus $100 in costs for battery. Defendant appeals.

The issues on appeal are whether there was error in giving and refusing certain jury instructions; whether defendant was proved guilty of the

offenses of theft and battery beyond a reasonable doubt; whether improper elements concerning aggravation and mitigation entered into the sentencing; whether defendant's sentence was excessive; and whether defendant's motion for a new trial was properly denied.

We conclude that the trial court erred in instructing the jury, and accordingly we reverse and remand the cause for a new trial.

Judith Billington, a security guard for the Turnstyle Department Store in Schaumburg, testified at trial as follows. On September 14, 1974, she observed defendant in the Turnstyle store for approximately 30 minutes. Defendant was accompanied by a younger woman and a baby. The women carried large, black, flattened purses. She saw defendant and the younger woman gather certain merchandise and place it into the two black purses which they had placed atop a car. During the course of her observations she indicated to Mark Edmonds, manager of the recreation department, that defendant was a shoplifting suspect. As defendant began to leave the building, Billington walked into a phone booth and dialed her own home phone number. From the phone booth she saw defendant leave the store without paying for the items. Billington left the building and saw defendant sitting in the driver's seat of a van, which was parked in a firelane just in front of the store. She approached the van on the passenger's side and displayed her badge to the younger woman. She announced that she was a security officer, that defendant and the younger woman were being detained for theft, and that they should hand over the purses and go with her. Having been ignored by the younger woman, she secured a foothold inside the van and showed her badge to defendant. She again announced her status, and told them that they were being detained for theft and that they should follow her. Defendant then accelerated, applied the brake and swerved, while Billington attempted to hang onto the moving van. Billington was hit with one of the purses, and she held onto the purse as she fell from the van, sustaining injuries. She went into the manager's office and opened the purse. In it she saw merchandise belonging to Turnstyle. She then called the Schaumburg police, and Officer Bartkavich arrived approximately 10 minutes later. Billington accompanied him to the Schaumburg Police Station, where warrants were sworn out. The purse and merchandise were introduced into evidence.

On cross-examination Billington testified that at the time of the incident she was wearing slacks, tennis shoes, a sweater, and a windbreaker, and that she was carrying a purse. She also stated that she was trained and employed by Turnstyle as a security guard, and that she was not a duly licensed police officer. She was, however, acquainted with the law of "bringing people under arrest or detaining them."

Mark Edmonds, manager of the recreation department of the Turnstyle

store, testified that Judith Billington had pointed defendant out to him in the store as a shoplifting suspect. He did not stay with Billington because he did not want to give her away. He did not see anyone with defendant nor did he see defendant break the law. He saw that Billington was injured.

Marilyn McArthur, resident security agent for the Turnstyle store, testified as follows. As she arrived at the Turnstyle store in her car, she observed Judith Billington getting in on the passenger's side of defendant's van; defendant was getting in on the driver's side. She did not notice if there were other passengers. It appeared to her that Billington was displaying her badge and making a "stop." She also saw the van accelerate and brake suddenly. She got out of her car and followed the vehicle on foot. She then saw Billington on the ground, injured.

William Bartkavich, a Schaumburg police officer assigned to investigate the theft, testified. He identified certain items at trial, and stated that he had first seen them when he removed them from the purse at the Turnstyle store, and that he later inventoried them at the police station.

Defendant testified on her own behalf. On the morning of the incident she went shopping with her four-month-old son and her 15-year-old stepdaughter. Defendant drove the family van. They stopped at the Woodfield Mall shopping center and made some purchases, and then drove to the Turnstyle store for school supplies. They entered the store through a doorway at which there were no counters or registers. The only accessory they carried, other than her own purse, was a black bag in which she kept things for the baby. She did not find what she was looking for after 10 minutes, and so they left the store through the same doorway at which they had entered. They returned to the van and defendant started the engine. Her stepdaughter was in the passenger's seat holding the baby. At that time a "strange lady," who was dressed in civilian clothes, opened the passenger door. Defendant heard her yell "Let go." Defendant denied hearing the woman announce that she was a security officer. She saw the woman holding the baby's shirt. She thought that the woman was attempting to take the baby, so she started to pull out with the van. The bag with the baby's things fell out of the van during the incident. She drove home, but did not report the incident to the authorities.

Defendant's stepdaughter gave essentially the same testimony as defendant.

The jury found defendant guilty of both theft and battery, and she was sentenced on both offenses. Defendant's objections to the jury instructions, together with other alleged trial error, were set forth in her motion for a new trial, which was denied.

On appeal defendant contends that the trial court erred in refusing to

give the jury her defense instruction, Illinois Pattern Jury Instructions, Criminal, No. 24.06 (hereinafter cited as IPI Criminal), concerning justifiable use of force in self-defense or in defense of another. The State argues that defendant's contention is not subject to review because defendant failed to properly preserve the record and excerpt all instructions.

Section 67 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 67) provides in part:

"(1) * * * An original and one copy of each instruction asked by any party shall be tendered to the court. The copies shall be numbered and shall indicate who tendered them. Copies of instructions given on the court's own motion or modified by the court shall be so identified. When instructions are asked which the court cannot give, he shall on the margin of the original and copy write the word 'refused', and he shall write the word 'given' on the margin of the original and copy of those he gives. * * *.

(2) The original written instructions given by the court to the jury shall be taken by the jury to the jury room, and shall be returned by them with their verdict into court. The originals and copies of all instructions, whether given, modified or refused, shall be filed as a part of the proceedings in the cause."

Section 67 is made applicable to criminal cases by Supreme Court Rule 451(c). Ill. Rev. Stat. 1973, ch. 110A, par. 451(c).

In the instant case a copy of the "refused" instruction IPI Criminal No. 24.06 was not made part of the record on review; further, almost all of the instructions which have been made part of the record do not indicate who tendered them or whether they were given or refused. The State asserts that the record shows only that IPI Criminal No. 24.06 was refused and that IPI Criminal No. 24.08 was given and has set them out verbatim in its brief, labelled respectively "refused" and "given."

■■ Failure to follow the procedures outlined in section 67 is sufficient to warrant a court's refusal to review alleged error in the instructions. (*People v. Welch* (1961), 22 Ill. 2d 558, 177 N.E.2d 160; *People v. Chamberlain* (1972), 5 Ill. App. 3d 235, 282 N.E.2d 784.) Such failure has been termed an "important technical failure"; yet courts have considered the merits of certain cases even where there was a total failure to show who tendered the instructions, whether they had been given or refused, and whether they bear the proper notations. *People v. Westbrook* (1965), 56 Ill. App. 2d 60, 205 N.E.2d 511; see also *People v. Thompson* (1967), 36 Ill. 2d 332, 223 N.E.2d 97.

The record before us, however, includes a sufficient transcript from the conference on the instructions at issue, as well as a written post-trial motion. From them we can identify who gave the instructions, and we

also find that the trial court's attention was specifically called to the error alleged. Under similar circumstances, it became "necessary" for a reviewing court to search out and identify the instructions from the transcript, although none of the instructions certified by the clerk of the Circuit Court had been marked "given" or "refused." See *Ryan v. Monson* (1961), 33 Ill. App. 2d 406, 179 N.E.2d 449.

In our search of the record in the instant case we note that defendant's "Praecipe for Record" requests the clerk of the Circuit Court to include in the record for review "[a]ll jury instructions, both given and refused." Twenty-one instructions have been so certified and made part of the record, all of which have been further excerpted from the record by defendant. One of the instructions is identical to IPI Criminal No. 24.08. An instruction in the language of IPI Criminal No. 24.06 is not among the 21 instructions. However, the report of proceedings shows that defendant submitted IPI Criminal No. 24.06 in the middle of the State's case, and the parties agreed that reference in that instruction to deadly force be left out. At the same time defendant also submitted IPI Criminal No. 24.08. The trial court said that this instruction would be given, that "24.08 is a better instruction than 24.06," and that [s]o far I'm not going to admit that one [24.06]." Defendant then withdrew IPI Criminal No. 24.06, and defense counsel said that he would submit it again after all the evidence. At the conclusion of defendant's case in chief, defendant offered both IPI Criminal Nos. 24.06 and 24.08. The trial court stated that "24 decimal 06 is out as I heretofore ruled. And 24 decimal 08 is in as I have heretofore ruled."

■■ From the foregoing we cannot say that the record is so deficient with respect to the above instructions as to warrant our refusal to review the alleged error. (See, *e.g., People v. Chamberlain*.) We find that defendant has adequately preserved the record as to those instructions.

Our foremost concern is whether the instructions given to the jury properly state the applicable principles of law to enable the jury to reach a just result: Although defendant was convicted of both theft and battery, her argument with respect to jury instructions centers on her instructions regarding justifiable use of force in connection with the offense of battery. The focus of our inquiry therefore is on the instructions concerning the offense of battery and defenses thereto.

■■ Defendant was charged with battery in that she "intentionally *without legal justification* caused bodily harm * * *." (Emphasis added.) The record contains a battery instruction labelled "IPI Criminal Number *11.05.* People's Instruction Number *4.*" The instruction reads as follows: "The Court instructs the jury that in Illinois there is a statue [*sic*] which provides in pertinent parts that: A person commits the crime of battery who by any means knowingly or intentionally causes bodily harm to

another person." Omitted from the pattern instruction is the phrase "without legal justification." (Compare with IPI Criminal No. 11.01 (assault), and the Committee Note, at 163.) This phrase is not an essential element of the crime of battery, and it is defendant's burden to raise legal justification as an affirmative defense and to tender instructions which bear favorably upon an applicable defense. *People v. Worsham* (1975), 26 Ill. App. 3d 767, 326 N.E.2d 134.

The record shows that the trial court gave IPI Criminal No. 24.08, and that it refused to give defendant's self-defense instruction, IPI Criminal No. 24.06. Defendant argues that the trial court erred in its refusal.

IPI Criminal No. 24.06 provides in pertinent part:

"24.06 Use of Force in Defense of a Person

A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend [himself] [another] against the imminent use of unlawful force."

IPI Criminal No. 24.08 provides in pertinent part:

"24.08 Use of Force in Defense of Property

A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to [prevent—terminate] another's [trespass on—wrongful interference with] [real property other than a dwelling—personal property] lawfully [in his possession—in the possession of another who is a member of his (immediate family—household)—in the possession of a person whose property he has a legal duty to protect]."

■■ A defendant in a criminal case is entitled to have the jury instructed on any legally recognized defense theory which has some foundation in the evidence, however tenuous. (*People v. Dortch* (1974), 20 Ill. App. 3d 911, 314 N.E.2d 324.) In the instant case there was evidence from which the jury could have believed that defendant acted to defend herself or her children. Billington, the security guard, testified that on the day in question she was dressed in civilian-type clothes, that she first confronted defendant after she had left the building, that after she unsuccessfully attempted to "detain" defendant, she (Billington) tried to climb into the van on the passenger's side, and was injured as she clung to the moving van. Defendant testified as follows: "I started up the van and the next thing I know the passenger door was opened, there was this lady standing there. She had grabbed ahold of my baby's sweatshirt, Deborah was holding the baby. I thought she was trying to steal my baby, so I started pulling out." Defendant's stepdaughter also testified that as the van started to move a woman braced herself against the door of the van and took hold of the baby's shirt. We find that it was error to refuse to give

the instruction IPI Criminal No. 24.06, where the issue of justifiable use of force in self-defense or in defense of another has been raised.

The State maintains that no error occurred because the jury was adequately instructed on the subject matter insofar as IPI Criminal No. 24.08, which was given, covers defendant's theory of justifiable use of force. A defendant cannot complain where the given instructions cover the entire law of a case, or where the refused instruction only duplicates another instruction given. (*People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) However, in the instant case, defendant's refused instruction of justifiable use of force in self-defense or in defense of another is not covered by nor does it duplicate the instruction concerning justifiable use of force to prevent trespass on personal property. It is fundamental that the jury must be informed of the elements of the crime. A failure to do so may be noticeable as plain error. *People v. Davis* (1966), 74 Ill. App. 2d 450, 221 N.E.2d 63; see also *People v. Worsham.*

■■ The preceding instructions do not apprise the jury of justifiable use of force in self-defense or in defense of another. We conclude that it was error for the trial court to refuse to give IPI Criminal No. 24.06, thereby excluding from the jury a theory which finds support in the evidence. To this extent defendant has been prejudiced at trial with respect to the charge of battery.

■■ However, since defendant was jointly tried for battery and theft and was convicted for each offense, we cannot say that both these convictions have not been tainted by the prejudice. Therefore, both convictions must be reversed and the cause remanded for a new trial.

Defendant complains of errors in other jury instructions. Unlike those considered above, the conference and rulings as to these instructions have not been properly preserved for our review. Since we reverse and remand for a new trial, defendant's remaining contentions need not be considered. Furthermore, we do not here analyze the evidence nor express an opinion as to guilt.

For the reasons stated, the judgments of conviction are reversed and the cause remanded to the circuit court of Cook County for a new trial.

Reversed and remanded.

McNAMARA and McGLOON, JJ., concur.